UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON EDDIE MENDEZ, | No. 2:22-cv-01084-KJM-EFB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| A. MORALES, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  He filed this action on June 24, 2022.  ECF No. 1.  On November 3, 2022, pursuant to 28 U.S.C. § 1915A(a), the court determined that plaintiff's complaint alleged potentially cognizable Eighth Amendment conditions of confinement claims against defendants Morales and Raphael, and a First Amendment retaliation claim against defendant Morales.  ECF No. 5.  All other claims were dismissed with leave to amend.  *Id.*  Plaintiff opted not to amend his complaint.  ECF No. 8.  Now before the court is defendants' motion for summary judgment, both on procedural and substantive grounds.  For the reasons that follow, the motion for summary judgment should be GRANTED.

**I.      The Complaint**

Plaintiff is currently housed at North Kern State Prison.  The alleged events underlying plaintiff's complaint took place in 2019, when he was occasionally transferred between CSP

1

1  Corcoran and CSP Sacramento.  ECF No. 1 at 4.  Plaintiff claims that each time he arrived in

2  Sacramento, he would be confined for hours in a single-occupancy holding cell.  *Id.* at 9, 13-14.

3  Two of these alleged instances are described in the complaint.  The first alleged instance occurred

4  on April 11, 2019.  Defendant correctional officers Raphael and Morales allegedly confined

5  plaintiff to the holding cell for 10.5 hours, and denied him food, medical care for his pain, and use

6  of a bathroom.  *Id.* at 9, 13.  The second alleged instance occurred on July 1, 2019.  *Id.* at 4.

7  Plaintiff allegedly was confined to the holding cell for 10.5 hours without food or access to a

8  toilet, causing him to urinate on himself.  *Id.* at 8.  When over four hours had passed, plaintiff told

9  Morales he would be filing an administrative complaint against him.  *Id.* at 5.  In response,

10  Morales allegedly threatened "Don't do something you'll regret" and angrily walked away from

11  the standing cage until the next shift arrived.  *Id.* at 5-6.

12      According to plaintiff, he suffered physical and mental harm as a result of the above

13  events.  *Id.* at 17.  He seeks compensatory and punitive damages, and declaratory relief.  *Id.* at 18.

14  **II.      Summary Judgment Standard**

15      Summary judgment is appropriate when there is "no genuine dispute as to any material

16  fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

17  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

18  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

19  to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

20  (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.*

21  *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  A summary judgment motion asks

22  whether the evidence presents a sufficient disagreement to require submission to a jury.

23      The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

24  or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

25  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

26  trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R.

27  Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary

28  judgment practice, the moving party bears the initial responsibility of presenting the basis for its

1    motion and identifying those portions of the record, together with affidavits, if any, that it

2    believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323;

3    *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets

4    its burden with a properly supported motion, the burden then shifts to the opposing party to

5    present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*,

6    477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

7          A clear focus on where the burden of proof lies as to the factual issue in question is crucial

8    to summary judgment procedures. Depending on which party bears that burden, the party seeking

9    summary judgment does not necessarily need to submit any evidence of its own. When the

10    opposing party would have the burden of proof on a dispositive issue at trial, the moving party

11    need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National*

12    *Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

13    which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-

14    24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

15    summary judgment motion may properly be made in reliance solely on the 'pleadings,

16    depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment

17    should be entered, after adequate time for discovery and upon motion, against a party who fails to

18    make a showing sufficient to establish the existence of an element essential to that party's case,

19    and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a

20    circumstance, summary judgment must be granted, "so long as whatever is before the district

21    court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

22    satisfied." *Id*. at 323.

23          To defeat summary judgment the opposing party must establish a genuine dispute as to a

24    material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that

25    is material, *i.e.*, one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at

26    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

27    will properly preclude the entry of summary judgment."). Whether a factual dispute is material is

28    determined by the substantive law applicable for the claim in question. *Id*. If the opposing party

3

1    is unable to produce evidence sufficient to establish a required element of its claim that party fails

2    in opposing summary judgment. "[A] complete failure of proof concerning an essential element

3    of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S.

4    at 322.

5         Second, the dispute must be genuine. In determining whether a factual dispute is genuine

6    the court must again focus on which party bears the burden of proof on the factual issue in

7    question. Where the party opposing summary judgment would bear the burden of proof at trial on

8    the factual issue in dispute, that party must produce evidence sufficient to support its factual

9    claim. Conclusory allegations, unsupported by evidence, are insufficient to defeat the motion.

10   *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit

11   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

12   for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to

13   demonstrate a genuine factual dispute, the evidence relied on by the opposing party must be such

14   that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

15   477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

16        The court does not determine witness credibility. It believes the opposing party's

17   evidence and draws inferences most favorably for the opposing party. *See id.* at 249, 255;

18   *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the

19   proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l*

20   *Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing

21   *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary

22   judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On

23   the other hand, the opposing party "must do more than simply show that there is some

24   metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead

25   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

26   *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary

27   judgment.

28        Concurrent with their motion for summary judgment, defendants advised plaintiff of the

4

1  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

2  ECF No. 34-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d

3  952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999).

4  **III.     Analysis**

5           **A.  Administrative Exhaustion**

6           Defendants first maintain that plaintiff failed to exhaust administrative remedies as to his

7  April 11, 2019 conditions of confinement claim and as to his July 1, 2019 retaliation claim, thus

8  entitling defendants to summary judgment on those claims.

9                       **1.   Undisputed Facts Regarding Administrative Exhaustion**

10          An administrative grievance process was available to plaintiff at all times from April 11,

11  2019 (the date of the first alleged event) through June 24, 2022 (the date plaintiff filed this

12  action).  Declaration of D. Contreras (Contreras Decl.) (ECF No. 34-9) ¶ 2; Declaration of

13  Howard E. Moseley (Moseley Decl.) (ECF No. 34-10) ¶ 6.  Prior to June 1, 2020, inmates were

14  required to follow the procedures detailed in the California Code of Regulations, Title 15,

15  sections 3084-3085.  This process had three levels of review, and a grievance was considered

16  exhausted after a final decision by the Office of Appeals (OOA).  Contreras Decl. ¶ 3; Moseley

17  Decl. ¶ 6.

18          As of June 1, 2020, inmates are required to follow the procedures set forth in the

19  California Code of Regulations, Title 15, sections 3480-3487.  Contreras Decl. ¶ 4; Moseley

20  Decl. ¶ 6.  This process has two levels of review, and a grievance is considered exhausted after a

21  final decision by the OOA.  *Id.*

22          Plaintiff submitted one grievance related to the matters alleged in his complaint: Log. No

23  SAC-19-03142.  Contreras Decl. ¶¶ 7-9, Ex. C.  This grievance is dated July 24, 2019.  *Id.*  The

24  other grievances submitted by plaintiff during the relevant time period did not address the

25  allegations in plaintiff's complaint.  *Id.* at ¶ 10, Ex. D.

26          Log. No SAC-19-03142 was determined to be a staff complaint and bypassed the first

27  level of review.  The second level review partially granted the grievance in that a confidential

28  appeal inquiry was conducted.  Contreras Decl. ¶ 9; Moseley Decl. ¶ 9.  The OOA subsequently

1    received Appeal Log No. 1914538, an appeal of Log. No SAC-19-03142.  Moseley Decl. ¶ 9.

2    The appeal included new allegations that were not in the original grievance; these were not

3    addressed by the OOA.  *Id.*  Plaintiff's appeal was denied by the OOA on February 24, 2020.  *Id.*,

4    Ex. 3.

5                    **2.  Administrative Exhaustion Analysis**

6            Defendants maintain that plaintiff failed to exhaust administrative remedies as to his April

7    11, 2019 conditions of confinement claim and his July 1, 2019 retaliation claim, thus entitling

8    them to summary judgment on those claims.

9            The Prison Litigation Reform Act (PLRA) of 1995 provides that "[n]o action shall be

10   brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

11   prisoner confined in any jail, prison, or other correctional facility until such administrative

12   remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA applies to all suits

13   about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and a prisoner is required to exhaust

14   those remedies which are available.  *See Booth v. Chumer*, 532 U.S. 731, 736 (2001).  To satisfy

15   the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has

16   included in the complaint.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v. Nussle*, 534

17   U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials "time and

18   opportunity to address complaints internally before allowing the initiation of a federal case").

19           Dismissal for failure to exhaust should generally be brought and determined by way of a

20   motion for summary judgment under Rule 56.  *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir.

21   2014).  Under this rubric, defendant bears the burden of demonstrating that administrative

22   remedies were available, and that the plaintiff did not exhaust those remedies.  *Id.* at 1172.  If

23   defendant carries this burden, then plaintiff must "come forward with evidence showing that there

24   is something in his particular case that made the existing and generally available administrative

25   remedies effectively unavailable to him."  *Id.*  If the undisputed evidence, construed in the light

26   most favorable to plaintiff, demonstrates that plaintiff did not exhaust the available administrative

27   remedies, then defendant is entitled to summary judgment.  *Id.* at 1166.

28   ////

                                                    6

1      Defendants maintain that plaintiff's relevant grievance did not address either his April 11,

2    2019 conditions of confinement claim or his July 1, 2019 retaliation claim, thus rendering them

3    both unexhausted.  Plaintiff's relevant grievance, Log. No SAC-19-03142 states as follows.

4          On July 1, 2019 I was transferd [sic] from Corcoran State Prison to C.S.P.
          Sacramento.  I arrived at R & R at Sac approximately 2:00 pm.  I was placed in a
5          small cage that is estimated to 4 feet by 4 feet all around.  I was housed till 12:30
          am.  This is a violation of the eight amendment, cruel & unusual punishment to be
6          in a cage for almost 11 hours.  The objective component in a condition to violate
          eight amend is "the unnecessary and wanton infliction of pain."  Rhodes v.
7          Chapman, 452 U.S. at 347; Wilson v. Seiter 501 U.S. at 297.  I was forced to stand
          for a long period and when I would attempt to sit down on the floor I wasn't able
8          to stretch my legs forward cutting the circulation on my legs, this was extremely
          painful to not be able to stretch.  Wilson v. Seiter, 501 U.S. at 304.  "Shelter"
9          includes various aspects of physical condition like sanitation and sleep enough
          room to rest mentaly [sic] and physicaly [sic].  I am CCCMS and take Remeron
10         Medication which made my suffering worst, it mentaly [sic] affected since I was
          deprived of sleep.  Harper v. Showers 174 F.3d 716, 720 (5th Cir. 1999) Merritt v.
11         Hawk, 153 F. Supp. 2d 1216, 1228 (D. Colo. 2001).  The subject component.
          Deliberate indifference were careless alledging [sic] they were
12         looking for bed spaces when in fact, Sac knew I was [en route] from Corcoran and
          there is a empty sec in B-yard which had been used as overflow in past.  I was
13         intentionally tortured.

14    Contreras Decl. ¶¶ 7-9, Ex. C.

15        Defendants have submitted evidence in support of their argument that plaintiff submitted

16    only one grievance (*i.e.* Log. No SAC-19-03142) that addresses the alleged facts in his complaint

17    between the relevant dates of April 11, 2019 (the date of the first alleged event) and June 24,

18    2022 (the date plaintiff filed this lawsuit).  Specifically, defendants have submitted an official log

19    of all grievances filed by plaintiff during that time period, and copies of the grievances

20    themselves.  Contreras Decl., Exs. A-D.  The court has reviewed these submissions and concludes

21    that the evidence submitted by defendants confirms that Log. No SAC-19-03142 was the only

22    grievance relevant to plaintiff's current federal complaint filed during the time period at issue.

23    And, as defendants have demonstrated, Log. No SAC-19-03142 only addresses alleged events of

24    July 1, 2019, and does not mention any incident on April 11, 2019.  In addition, there is no

25    reference to any defendant retaliating against plaintiff during the July 2019 incident.  In his

26    opposition, plaintiff does not dispute these facts.  ECF No. 40.

27        Plaintiff did, however, unsuccessfully attempt to add new allegations in his appeal of his

28    original grievance.  Specifically, he maintained that he had experienced similar conditions on

7

1    April 11, 2019.  Moseley Decl., Ex. 3.[1]  The OOA, however, specifically declined to accept these

2    additional allegations as part of the appeal, stating in the final appeal decision denying plaintiff's

3    grievance that "[t]he appellant has added new issues and requests to the appeal.  The additional

4    requested action is not addressed herein as it is not appropriate to expand the appeal beyond the

5    initial problem and the initially requested action (CDC Form 602, Inmate/Parolee Form, Sections

6    A and B)."  *Id.*  In addition, the final appeal decision specifically states that it is considering

7    plaintiff's allegations that "on July 1, 2019, he transferred to California State Prison-Sacramento

8    (SAC) from Corcoran State Prison.  He was placed in a small holding cell in the Receiving and

9    Release area from approximately 1400 until 2430 hours while staff were looking for bed space.

10   The holding cell was approximately '4 feet by 4 feet' all around."  *Id.*  The appeal accepted and

11   processed did not address any allegations regarding April 2019 or retaliation by an officer on July

12   1, 2019.  *Id.*

13          In his opposition, plaintiff does not dispute that Log. No SAC-19-03142 – which does not

14   address April 2019 or retaliation on July 1, 2019 – was his only grievance regarding the events

15   alleged in his complaint.  ECF No. 40.  Rather, he argues that the final appeal decision from the

16   OOA states that "[t]his decision exhausts the administrative remedy available to the appellant

17   within CDCR."  ECF No. 40 at 9.

18          While the final appeal letter confirms that he exhausted his administrative remedies as to

19   Log. No SAC-19-03142, *id.*, *see also* Moseley Decl., Ex. 3, it does not confirm that he exhausted

20   his administrative remedies as to the allegation in this case.  What plaintiff does not address and

21   is undisputed, is that Log. No SAC-19-03142 only includes allegations regarding July 1, 2019.

22   That grievance does not include any allegations of retaliation, and the final appeal specifically

23   states that it does not concern any additional allegations besides those regarding July 1, 2019.  *Id.*

24          The requirements of a particular prison, and not the PLRA, "define the boundaries of

25   proper exhaustion."  *Jones*, 549 U.S. at 218.  California regulations in place at the time of

26   plaintiff's grievance made clear that "[a]dministrative remedies shall not be considered exhausted

27

28          [1] Plaintiff did not add any additional allegations on appeal regarding officer retaliation.

8

1    relative to any new issue, information, or person later named by the appellant that was not

2    included in the originally submitted CDCR Form 602." Cal Code Regs. Tit. 15, § 3084.1(b).

3    Here, Log. No SAC-19-03142 contained only issues relating to plaintiff's confinement on July 1,

4    2019, and not to any alleged retaliation on that date, or to any events occurring in April 2019.

5    Thus, claims relating to events other than plaintiff's confinement on July 1, 2019, including any

6    claims of retaliation, are outside of the scope of Log. No SAC-19-03142, and thus were not

7    administratively exhausted. *See, e.g. Clair v. Terry*, 2016 WL 3055872, *6 (N.D. Cal. May 31,

8    2016) (confirming that events not raised in the initial grievance are not exhausted, even if they are

9    raised on administrative appeal).

10          The undisputed evidence, construed in the light most favorable to plaintiff, demonstrates

11   that plaintiff did not exhaust the available administrative remedies as to all of his claims.

12   Accordingly, defendants are entitled to summary judgment as to these unexhausted claims. *See*

13   *Albino,* 747 F.3d at 1166. Specifically, plaintiff's claim of retaliation against defendant Morales,

14   and any claims related to events occurring in April 2019, have not been exhausted and are

15   therefore barred under the PLRA.

16                    **B. Eighth Amendment Claim for Events of July 1, 2019**

17          Because the PLRA bars plaintiff's retaliation claim against defendant Morales, and his

18   Eighth Amendment claim relating to the alleged events of April 11, 2019, plaintiff's only

19   remaining claim is his Eighth Amendment claim relating to the alleged events of July 1, 2019.

20                    **1.   Undisputed Facts Regarding July 1, 2019 Conditions of
                             Confinement Claim[2]**

21

22          At all times relevant to the allegations in this action, plaintiff was an inmate in the custody

23   of CDCR and defendants were employed as Correctional Officers at CSP-Sacramento. ECF No.

      1 at 1-4; Declaration of A. Morales, ECF No. 34-7 (Morales Decl.) ¶ 1; Declaration of R.
24
      Raphael, ECF No. 34-6 (Raphael Decl.) ¶ 1.
25
             On July 1, 2019, at around 2:00 pm, plaintiff arrived at CSP-Sacramento as a transferee
26
      from CSP-Corcoran. ECF No. 1; Plaintiff's Depo. (ECF No. 48) at 21:2-5. Plaintiff was then
27

28          [2] Defendants have submitted a separate statement of undisputed facts. ECF No. 34-3.

1    placed in a holding cell pending assignment to permanent housing.  *Id.*

2          During his time waiting for a housing assignment, plaintiff was placed in one of the

3    holding cell in a location referred to as Receiving and Release (R & R).  Plaintiff's Depo. at 41:4-

4    14; ECF No. 1.  Defendants were the only officers who worked the third shift (from 1:00 p.m. –

5    12:45 a.m.) at R & R on July 1, 2019.  Morales Decl. ¶ 3; Raphael Decl. ¶ 2.  Two registered

6    nurses and a sergeant were also staffed at R & R.  Morales Decl. ¶ 4; Raphael Decl. ¶ 3.  R & R at

7    CSP-Sacramento contains approximately 25 holding cells and four "wet cells."  Morales Decl. ¶

8    5; Raphael Decl. ¶ 4.  The wet cells contain sinks and toilets, and are provided to ADA inmates

9    and other inmates who cannot be placed in a holding cell for medical reasons.  *Id.*

10          Plaintiff was placed in a regular holding cell, without a sink or toilet.  *Id.*; ECF No. 1.  The

11    holding cells are single-occupancy, and tall enough and wide enough for inmates to stand and sit.

12    Morales Decl. ¶ 12; Raphael Decl. ¶ 9.  During his time in the holding cell, plaintiff alternated

13    between standing up and sitting down.  Plaintiff's Depo. at 28:14-25; 29:1.  Plaintiff alleges that

14    he experienced pain and cramping from standing and sitting in the cell.  ECF No. 1.

15    After his arrival at R & R, plaintiff was seen by the R & R medical staff.  Plaintiff's Depo. at

16    42:9-12.  Plaintiff was again seen by medical staff at 7:00 p.m.  *Id.* at 42:16-25; 45: 6-9; 43: 1-7.

17    At that time, his vitals were taken, and he was given water and his prescribed medications.  *Id.*

18    Plaintiff remained in the holding cell until about 12:11 a.m., at which time he was escorted to his

19    assigned housing.  Morales Decl. ¶ 10; ECF No. 1; Plaintiff's Depo. at 52:13-16.

20          There are no records in plaintiff's prison medical file that indicate he sought treatment for

21    or complained of any harm as a result of his time in the holding cell on July 1, 2019.   Declaration

22    of M. Bobbala, M.D., ECF No. 34-5 (Bobbala Decl.)  ¶¶ 7-9; Declaration of Molly Christ (Christ

23    Decl.) at Ex. 1 & Ex. A.  Plaintiff had a medical visit with Dr. Uddin on July 19, 2019.  *Id.*  His

24    chief complaint was for right shoulder pain that the medical notes stated had been ongoing for

25    two years.  *Id.*  The medical notes do not show any complaints from plaintiff relating to pain or

26    injuries suffered while he was in the holding cell on July 1, 2019.  *Id.*

27    ////

28    ////

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2. Disputed Facts Regarding July 1, 2019 Conditions of Confinement Claim

Plaintiff alleges that he was not provided access to a bathroom while he was held at R & R. ECF No. 1. Defendant Raphael maintains that he frequently made rounds of R & R, during which times he asked inmates if they needed to use the bathroom. Defendants also allege that inmates were allowed to use the restroom at other times if they requested it, at which time they would be escorted to the wet cells. Raphael Decl. ¶ 10.

Plaintiff alleges that as a result of not having access to a bathroom, he urinated on himself, which dried on his pants and on the floor. ECF No. 1; Plaintiff's Depo. at 46:12-16. Defendants maintain they do not recall any inmate urinating on himself during their R & R shifts. Morales Decl. ¶ 13; Raphael Decl. ¶ 11.

Plaintiff alleges that he was not provided with a dinner meal during his time in the holding cell. ECF No. 1; Plaintiff's Depo. at 27:1-14; 34:12-15. Defendants maintain that they provided all inmates in the holding cells a dinner meal, beginning at around 5:00 p.m. Morales Decl. ¶ 14; Raphael Decl. ¶ 12.

Plaintiff maintains that defendants ignored his complaints of pain from standing and sitting in the holding cell. ECF No. 1. Plaintiff also alleges that he told defendants he lost circulation in his legs and collapsed, but defendants did not provide any medical attention. *Id.* Defendants do not recall whether plaintiff told them he was in pain. Morales Decl. ¶ 16; Raphael Decl. ¶ 14. Defendants also do not recall that any inmates collapsed, but maintain that if an inmate collapsed, they would have called in a medical emergency which would prompt medical staff to come to R & R. Morales Decl. ¶ 15-18; Raphael Decl. ¶ 13-16.

### 3. Legal Standard for Conditions of Confinement Claims

The Eighth Amendment to the U.S. Constitution protects prisoners from inhumane methods of punishment and inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confernent claim, and only those deprivations denying the minimal civilized measures of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violations. *Hudson*

11

1   *v. McMillan*, 503 U.S. 1, 9 (1992).  To succeed on an Eighth Amendment conditions of

2   confinement claim, a prisoner must show that 1) the defendant prison official's conduct deprived

3   him or her of the minimal civilized measure of life's necessities (the objective component) and 2)

4   the defendant acted with deliberate indifference to the prisoner's health or safety (the subjective

5   component).  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To show deliberate indifference, the

6   prisoner must establish that the defendant knew of and disregarded an excessive risk to inmate

7   health or safety; "the official must both be aware of facts from which the inference could be

8   drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at

9   837.

10   ### 4.  Analysis of July 1, 2019 Conditions of Confinement Claim

11   Plaintiff alleges that four conditions of confinement he experienced on July 1, 2019

12   violated the Eighth Amendment: 1) he was placed in a holding cell for 10.5 hours while housing

13   was secured (Plaintiff's Depo. at 41:4-14; 52:13-16); 2) he was not provided with a dinner meal

14   during the time he was placed in a holding cell (ECF No. 1 at 13); 3) he was not provided access

15   to a bathroom while in the holding cell (*id.*); and 4) his complaints of pain and collapse from

16   standing in the holding cell were ignored (*id.* at 6).  Each of these will be considered in turn.

17   ### a.  Placement in a Holding Cell

18   First, plaintiff maintains that it was unconstitutional for him to be placed in a holding cell

19   at R & R for around 10.5 hours pending his housing assignment.  It is undisputed that plaintiff

20   was secured in a holding cell at the time he was transferred to CSP-Sacramento from CSP-

21   Corcoran on July 1, 2019, and that his time in the holding cell amounted to around 10.5 hours.

22   But defendants argue that 10.5 hours in the cell does not amount to an Eighth Amendment

23   violation.

24   As discussed *supra*, the Eighth Amendment prohibits deliberate indifference to conditions

25   of confinement that violate contemporary standards of decency, *i.e.* those which deny "the

26   minimal civilized measure of life's necessities," or which pose a risk of harm "that is not one

27   today's society chooses to tolerate."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Helling v.*

28   *McKinney*, 509 U.S. 25, 36 (1993); *Farmer*, 511 U.S. at 837.  The Eighth Amendment requires

1  that the conditions of a prisoner's confinement, even if harsh, have some legitimate penological

2  purpose.  *See Hudson v. Palmer,* 468 U.S. 517, 584 (1984).

3      With respect to physically restrictive temporary housing, such as the holding cells at issue

4  here, "prison officials have legitimate penological interest in such confinement and, as a result,

5  must be given wide-ranging deference in the execution of practices meant to enhance or preserve

6  order, discipline, and security."  *Stafford v. Doss, et al.*, 2021 WL 3563490, *12 (E.D. Cal., Aug.

7  21, 2021) (finding that a four-hour placement in a holding cell does not satisfy the objective

8  prong of the Eighth Amendment).  Here, plaintiff alleges that, upon transfer to CSP-Sacramento

9  on July 1, 2019, he was placed in a single-occupancy holding cell, pending assignment to

10  housing, from approximately 2:00 p.m. until 12:30 a.m.  ECF No. 1.  Defendants maintain that

11  the length of time plaintiff was in the holding cell is not sufficient to state a cognizable conditions

12  of confinement claim.  Defendants argue that plaintiff's time in the holding cell was temporary,

13  and did not pose an objectively serious risk of harm or injury, such that the Eighth Amendment

14  was violated.

15      "The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive

16  reasons is well within the terms of confinement ordinarily contemplated by a prison sentence."

17  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Here, plaintiff does not dispute that his placement in

18  a holding cell for 10.5 hours after his transfer to a new prison and pending a housing assignment

19  was for a nonpunitive reason*, i.e.* he was temporarily placed there pending his housing

20  assignment.

21      Plaintiff also cannot show that his time in the holding cell objectively constituted an

22  "extreme deprivation" such that the Eighth Amendment was violated.  *Hudson*, 503 U.S. at 9.

23  Plaintiff was in the holding cell for less than one day (approximately 10.5 hours), and repeated

24  placement of prisoners in single occupancy administrative segregation holding cells, even for

25  most of the day and evening, does not amount to a constitutional violation.  *Anderson v. County*

26  *of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).  While such confinement "is not pleasant", it "does

27  not rise to the level of deliberate indifference."  *Id.*  Similarly, the Seventh Circuit has found that

28  placement of an inmate in a single-occupancy dry cell for three days after transfer, in accordance

1   with a prison policy designed to prevent transferees from smuggling in contraband, did not result

2   in the type of "unquestioned and serious" deprivation required to implicate the Constitution.

3   *Jihad v. Wright*, 124 F.3d 204, 1997 WL 471345, *2 (7th Cir. Aug. 14, 1997).

4        Here, it is undisputed that plaintiff was housed in a cell where he was able to sit and stand,

5   and where he was, at a minimum, given water and his prescribed medicines.  Plaintiff's Depo. at

6   42:16-25; 45:6-9; 43: 1-7; 28:14-25; 29:1.  And, as addressed below, plaintiff's allegation that he

7   was not provided access to a bathroom and urinated on himself, while clearly unpleasant, does not

8   rise to the level of deliberate indifference.  Thus, accepting plaintiff's allegations as true and

9   viewing the evidence in the light most favorable to plaintiff, a rational trier of fact could not find

10  that plaintiff's temporary placement in a holding cell pending a housing assignment post-transfer

11  violated the Eighth Amendment.[3]

12       Plaintiff's temporary placement in the holding cell, for a non-punitive and legitimate

13  penological reason, did not deprive him of the "minimal civilized measures of life's necessities",

14  *Hudson*, 503 U.S. at 9, and thus defendants are entitled to summary judgment on this claim.

### b.  No Dinner Meal Provided

16       Second, plaintiff maintains that it was unconstitutional for him not to be provided with a

17  dinner meal during his 10.5 hours in the holding cell.  Defendants argue that this deprivation did

18  not amount to an Eighth Amendment violation.

19       "There is no question that an inmate's Eighth Amendment right to adequate food is clearly

20  established."  *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009).   Thus, "[t]he sustained

21  deprivation of food can be cruel and unusual punishment when it results in pain without any

22  penological purpose."  *Id.* at 814.  Specifically, because "inmates rely on prison officials to

23  provide them with adequate sustenance on a daily basis [,] [t]he repeated and unjustified failure to

24  do so amounts to a serious deprivation."  *Id.*

25  ////

27       [3] To demonstrate a genuine factual dispute, the evidence relied on by plaintiff must be
    such that a fair-minded jury "could return a verdict for [him] on the evidence presented."
28  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

14

1    Here, however, there was no "repeated and unjustified failure" to provide plaintiff with

2    food.  Rather, plaintiff maintains that he was not given one dinnertime meal while he was in the

3    holding cell on July 1, 2019.  ECF No. 1 at 13.  Plaintiff was given water and his prescribed

4    medicine.  Plaintiff's Depo. At 42:16-25; 45:6-9; 43: 1-7.  Even viewing the evidence in the light

5    most favorable to plaintiff, "deprivation of a single meal does not constitute an injury serious

6    enough to support an Eighth Amendment claim." *Darting v. Farwell*, 139 Fed. Appx. 847, 847-

7    48 (9th Cir. 2005); *see also Roberts v. Persona*, 2019 WL 17776965, *9 (C.D. Cal. Jan. 16, 2019)

8    (holding that allegations that plaintiff was denied a single meal on one occasion "do not rise to the

9    level of an Eighth Amendment violation").  Therefore, defendants are entitled to summary

10    judgment on plaintiff's claim that his deprivation of a meal amounts to a violation of the Eighth

11    Amendment.

12                        **c.  No Toilet Access for 10.5 Hours**

13    Third, plaintiff maintains that his lack of access to bathroom facilities while he was in the

14    holding cell on July 1, 2019 amounts to an Eighth Amendment violation.  He also alleges that he

15    urinated on himself during this time, because he was not provided with toilet access.  ECF No. 1;

16    Plaintiff's Depo. at 46:12-16.  Defendants maintain that they provided regular bathroom breaks

17    when they were requested by inmates in holding cells, and that they do not recall any inmate

18    urinating on themselves.  Morales Decl. ¶¶ 7-8; 13; Raphael Decl. ¶ 10.  Defendants argue,

19    however, that even taking as true plaintiff's allegation that he was denied access to a bathroom for

20    10.5 hours, this deprivation did not amount to a violation of the Eighth Amendment.

21    As discussed *supra*, an inmate challenging his conditions of confinement must make both

22    an objective and subjective showing.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

23    Regarding the objective prong, extreme deprivations are required; "only those deprivations

24    denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis

25    of an Eighth Amendment violation." *Hudson*, 503 U.S. at 9 (citation omitted).  "Prison officials

26    have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation,

27    medical care, and personal safety." *Johnson*, 217 F.3d at 731 (citations omitted).  "The

28    circumstances, nature, and duration of a deprivation of these necessities must be considered in

                                                    15

1    determining whether a constitutional violation has occurred." *Id.*

2         Objectively, minor deprivations suffered for short periods usually are not sufficiently

3    serious to constitute an Eighth Amendment violation. *Id.* at 732. However, "substantial

4    deprivations of shelter, food, drinking water, and sanitation" may be sufficiently serious despite a

5    shorter duration." *Id.* Thus, "toilets can be unavailable for some period of time without violating

6    the Eighth Amendment." *Id.* at 733; *see also Murillo v. MacDonald*, 536 Fed. Appx. 753 (9th

7    Cir. 2013) (finding that "the short-term deprivation of bathroom facilities, without more, is not

8    sufficiently grave to form the basis of an Eighth Amendment violation"); *Gunn v. Tilton*, 2011

9    WL 1121949, *3-4 (E.D. Cal. March 23, 2011) (finding that lack of access to a bathroom for

10   three to four hours did not violate the Eighth Amendment). But, the "subjection of a prisoner to

11   lack of sanitation that is severe or prolonged can constitute an infliction of pain within the

12   meaning of the Eighth Amendment." *Anderson v. County of Kern*, 43 F.3d 1310, 1314 (9th Cir.

13   1995) (citing cases).

14        How long an inmate may be deprived of sanitary toilets before the deprivation becomes

15   sufficiently serious is necessarily unsettled. "Conditions-of-confinement cases are highly fact-

16   specific." *Lamb v. Howe*, 677 Fed. Appx. 204, 209 (6th Cir. 2014). But as this court has

17   previously noted, the Ninth Circuit has provided some guidance. *See Oubichon v. Carey*, 2017

18   WL 2162940, *6-7 (E.D. Cal. May 17, 2017), citing *Anderson,* 45 F.3d 1310 at 1311-14.

19   *Anderson* indicates that depriving an inmate of a sanitary toilet for a night may be insufficiently

20   serious to support a conditions of confinement claim. 45 F.3d at 1313-14; *see also Oubichon v.*

21   *Carey*, 2017 WL 2162940, *7 (finding that exposure to an unsanitary toilet for one night did not

22   support an Eighth Amendment claim). By contrast, deprivation of longer than one night, coupled

23   with other concomitant deprivations, may be sufficiently serious to support a conditions of

24   confinement claim. *Johnson*, 217 F.3d at 729-30 (reversing district court's grant of summary

25   judgment to defendants and finding that the inmates' allegations of deprivation of working and

26   sanitary toilets for four days, if believed, were "sufficiently serious to satisfy the objective

27   component of an Eighth Amendment claim"); *see also Arellano v. Ojeda*, 660 Fed. Appx. 552

28   (9th Cir. 2016) (holding that lack of a working toilet for several days stated a cognizable

1    deliberate indifference claim).

2        There is "no doubt that toilets can be unavailable for some period of time without

3    violating the Eighth Amendment." *Johnson*, 217 F.3d at 733.  Analyzing whether deprivation of

4    a toilet is sufficient to satisfy the objective component of an Eighth Amendment claim requires

5    consideration of "the circumstances, nature, and duration" of the deprivation.  *Id* at 731.  Here,

6    plaintiff was without access to a restroom for a temporary period (10.5 hours) pending his

7    assignment to permanent housing, and this limited period of time did not pose a threat of serious

8    harm or illness, nor come close to approaching the type of extreme deprivation required to make

9    out an Eighth Amendment conditions of confinement claim.  *Farmer*, 511 U.S. at 834.

10        Other courts in this Circuit have found that allegations similar to plaintiff's do not support

11    an Eighth Amendment claim.  For example, in *Stevenson v. Adams*, the plaintiff alleged that he

12    was housed overnight in a holding cage in his t-shirt, boxers, socks, and shower shoes.  2012 WL

13    967650, *4 (E.D. Cal. Mar 12, 2012).[4]  The plaintiff alleged he was deprived of food and water

14    and not allowed to use the restroom during his time in the holding cage.  *Id.*  He also alleged that

15    the holding cage was dirty, cold, and infested with insects that bit him.  *Id.*  The court found that

16    the plaintiff's allegations fell "well short of supporting a claim under the Eighth Amendment",

17    reasoning that even with hours of no food, water, or access to a restroom, one night in a holding

18    cage was "no basis for a plausible claim that Plaintiff was subjected to conditions so objectively

19    grave they violated the Eighth Amendment." *Id.*   While plaintiff here was not given access to a

20    toilet for approximately 10.5 hours, causing him to soil himself, his conditions were arguably

21    more comfortable than those of the plaintiff in *Stevenson*, given that plaintiff here was provided

22    with water and visits from medical personnel, and was not housed in his underwear in a cell that

23    was cold and bug-infested.

24        In *Oubichon*, plaintiff alleged that, after a prison riot, he was placed overnight in a Chow

25    Hall with a malfunctioning toilet.  2017 WL 2162940, *1.  Other inmates in the Chow Hall used

26    the broken toilet, causing it to overflow with water and excrement.  *Id.*  Plaintiff subsequently

27    _____
        [4] While the court does not state the exact number of hours the plaintiff in *Stevenson* was
28    deprived of a toilet, the court does state the plaintiff was taken to the holding cage in "mid-
     afternoon" and taken to the restroom "the next morning."  2012 WL 967650, *4.

1   slipped and fell on the waste, causing him to fracture his wrist and hurt his back. *Id.* This court

2   found that although plaintiff's experience was "undoubtedly disturbing", his temporary

3   confinement overnight in a location with an unworking, unsanitary toilet was not "sufficiently

4   serious to satisfy the objective prong of a conditions of confinement claim." *Id.* at \*7.

5          The same is true here. Plaintiff was confined temporarily to a holding cell while awaiting

6   placement in permanent housing. Accepting as true his assertion that he was deprived of a toilet,

7   and urinated on himself as a result, the deprivation was not prolonged and recurring and there is

8   no evidence in his medical records that he suffered any injury from it. Further, he was provided

9   with water and visits with medical professionals. As such, "[p]laintiff has not presented evidence

10  upon which a reasonable jury could find that he was exposed to unsanitary conditions of such

11  duration to pose a serious threat to his safety or that defendants' response . . . displayed a

12  sufficiently culpable state of mind, *i.e.* deliberate indifference." *Id.* Rather, as in *Oubichon*, the

13  record shows that plaintiff's confinement was limited in time for a specific institutional purpose:

14  in this case, pending assignment to permanent housing after transfer from a different prison. In

15  sum, plaintiff's deprivation of a toilet for 10.5 hours does not amount to deliberate indifference to

16  a known serious risk to plaintiff, and defendants are entitled to summary judgment on this claim.

17                        **d.    Plaintiff's Complaints of Pain**

18         Plaintiff maintains that defendants knew of and disregarded his complaints of pain while

19  he was in the holding cell on July 1, 2019, thus violating the Eighth Amendment. Plaintiff alleges

20  that while he was in the holding cell, he told defendants he was in pain from standing and sitting

21  in the cell. ECF No. 1. Plaintiff also alleges that he told defendants he lost circulation in his legs

22  and collapsed, but defendants did not provide any medical attention. *Id.* Plaintiff testified that his

23  legs cramped when he sat down in the small cell, and that he would get tired when he stood up.

24  Plaintiff's Depo. at 48:10-23. Plaintiff also testified that he complained to the officers on duty

25  that he had been there too long and wanted to be housed and use the bathroom. *Id.* at 53: 9-16.

26  He also stated the officers were angry with him and used profanity. *Id.* Plaintiff alleges that

27  around 6:00 p.m., he told defendants his knee, feet, and back hurt from standing (ECF No. 1); at

28  around 7:00 p.m., his vital signs were taken and he was given his medication. Plaintiff's Depo. at

1    42:16-25; 45:6-9; 43:1-7.

2    Here, plaintiff is maintaining that defendants were deliberately indifferent to his medical

3    needs, thus violating the Eighth Amendment.  To succeed on such a claim, a plaintiff must

4    establish that: 1) he or she had a serious medical need; and 2) the defendant's response to that

5    need was deliberately indifferent.  *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *see also*

6    *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A serious medical need exists if the failure to treat

7    the condition could result in further significant injury or the unnecessary and wanton infliction of

8    pain.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may be shown by the denial, delay, or

9    intentional interference with medical treatment, or by the way in which medical care is provided.

10   *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

11   As noted, deliberate indifference requires that the prison official both be aware of facts

12   from which the inference could be drawn that a substantial risk of serious harm exists, and he

13   must also draw the inference.  *Farmer*, 511 U.S. at 837.  Thus, a defendant will be liable for

14   violating the Eighth Amendment if he knows that plaintiff faces "a substantial risk of serious

15   harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  A

16   physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth

17   Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to

18   competently treat a serious medical condition, even if some treatment is prescribed, may

19   constitute deliberate indifference in a particular case.  *Id.*

20   It is important to differentiate common law negligence claims of malpractice from claims

21   predicated on violations of the Eighth Amendment's prohibition of cruel and unusual punishment.

22   In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

23   support this cause of action."  *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

24   1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th

25   Cir. 2004).  Rather, plaintiff must show a deliberate disregard for a known medical need.  The

26   Ninth Circuit has made clear that a difference of medical opinion is, as a matter of law,

27   insufficient to establish deliberate indifference.  *Toguchi*, 391 F.3d at 1058.

28   ////

1    Assuming plaintiff's allegations are true and construing the evidence in the light most

2    favorable to plaintiff, the undisputed facts demonstrate that defendants did not know of and

3    disregard an excessive risk to plaintiff's health.  First, as defendants argue, standing and sitting in

4    a holding cell for a temporary amount of time does not present an objectively serious risk to

5    health.  The Ninth Circuit has made clear that "isolated occurrences of neglect" do not amount to

6    a constitutional violation." *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir 1990).  In *O'Loughlin*,

7    the inmate alleged that defendants repeatedly ignored his requests for medicine to treat his

8    "headaches, nausea, and pain." *Id.*  This alleged failure to provide medical care, however, did

9    "not rise to the level of 'unnecessary and wanton infliction of pain' which is 'repugnant' to the

10   Constitution and 'the conscience of mankind.'" *Id.* (citing *Estelle*, 429 U.S. at 106.)  Here

11   plaintiff was placed in a routinely-used holding cell pending his assignment to permanent

12   housing.  There is no indication that such a cell was an objectively serious risk to plaintiff's

13   health of which defendants should have been aware. *See Farmer*, 511 U.S. at 847.

14   In addition, plaintiff's complaints of pain from standing up in the cell and cramping while

15   sitting down were not evidence of serious medical needs that defendants ought to have addressed

16   immediately.  "A 'serious' medical need requires an ailment of a greater magnitude or with a

17   cause separate from confinement." *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

18   "Routine discomfort" resulting from incarceration is not a serious medical need. *Id.*  Similarly,

19   failure to promptly treat a non-serious medical condition does not implicate the Eighth

20   Amendment. *Eddy v. Norrish*, 1996 WL 468643, *2 (9th Cir. 1996) (finding no constitutional

21   violation for failure to treat a hemorrhoid).  Plaintiff says he complained of pain while sitting and

22   standing in the holding cell and that he collapsed when he lost circulation in his legs.  According

23   to plaintiff, the defendants did not address his pain.  But none of these facts demonstrate serious

24   medical needs posing an excessive risk to his health.  It is also significant that plaintiff alleges

25   that he informed defendants he was in pain around 6:00 p.m., but by 7:00 p.m. he was visited by

26   medical personnel, at which time plaintiff's vital signs were taken and he was given his

27   medication.  Plaintiff's Depo. at 36: 2-5; 42:16-25; 45:6-9; 43:1-7.

28   ////

20

1        Furthermore, when a prisoner alleges a delay in medical treatment, he must show that the

2    delay caused an injury.  *See, e.g. McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992),

3    overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en

4    banc); *Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1990) (finding that a delay of

5    several days in treatment did not violate Eighth Amendment where there was no emergency);

6    *Harper v. City of Los Angeles,* 533 F.3d 1010, 1026 (9th Cir. 2008) (plaintiff must demonstrate

7    that defendant's conduct was the causes of the claimed injury).  Here, plaintiff's claims of harm

8    resulting from the temporary placement in the holding cell are inconsistent.  In his complaint, he

9    alleges that he experienced pain and poor circulation in his legs, causing him to collapse to the

10   floor of the cell.  ECF No. 1.  In his deposition, however, plaintiff did not testify that he

11   collapsed; rather he stated that he experienced pain in his knee, urination, and nightmares as a

12   result of his time in the holding cell.  Plaintiff's Depo. at 46:22-25; 47:1-16; 64:9-12.

13       What is not disputed, however, is that plaintiff's medical records following his placement

14   in the holding cell do not reveal any injury or complaints resulting from his time there.  On July

15   19, 2019, plaintiff visited a doctor for chronic right shoulder pain, a shoulder MRI, and toenail

16   fungus.  There is no indication in the medical records that plaintiff complained of or was treated

17   for, numbness, neck, knee or lower back pain, or collapse in his holding cell.   Declaration of M.

18   Bobbala, M.D. (Bobbala Decl.) at ¶¶ 7-9; Christ Decl. at Ex. 1 & Ex. A.  His chief complaint was

19   for right shoulder pain that the medical notes stated had been ongoing for two years.  *Id.*  Without

20   evidence of injury, plaintiff cannot demonstrate that any delay in response to his complaints of

21   pain and discomfort while in the holding cell amounted to deliberate indifference to his medical

22   needs.  Defendants are entitled to summary judgment on this claim.[5]

23   **IV.    Recommendation**

24       For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendants' motion

25   for summary judgment (ECF No. 34) be GRANTED.

26   _____

27       [5] Defendants also maintain that they are entitled to qualified immunity on all of plaintiff's claims.   Because this court recommends that defendants be granted summary judgment on other grounds, the court does not reach qualified immunity issue.

28

1          These findings and recommendations are submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties. Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

6   within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

7   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

8

9   Dated: February 20, 2025

10                                                          EDMUND F. BRENNAN
                                                            UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28